STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant–Defendant,

v.

Patricia JAKUPKO, Nicholas Jakupko, and Matthew Jakupko, Appellees–Plaintiffs.

No. 29A02–0603–CV–207.

Court of Appeals of Indiana.

Nov. 17, 2006.

Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellant.

W. Scott Montross, John F. Townsend, III, Townsend & Montross, Indianapolis, IN, Attorneys for Appellees.

Jeffrey S. Wrage, Thomas F. Macke, Blachly, Tabor, Bozik & Hartman, Valparaiso, IN, Attorneys for Amicus Curiae.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

State Farm Mutual Automobile Insurance Company ("State Farm") appeals from the trial court's entry of summary judgment for Patricia Jakupko, Nicholas Jakupko, and Matthew Jakupko (collectively "the Jakupkos") on their claims for underinsured motorist coverage ("UIM"). State Farm contends that coverage under its policy for the Jakupkos' three negligent infliction of emotional distress claims is confined to a single "Each Person" limit of liability. In a declaratory judgment, the trial court concluded that the relevant policy provisions violate the underinsured motorist statute, that the same provisions are ambiguous, and that the UIM coverage for emotional distress claims is illusory. We hold that the Jakupkos' negligent infliction of emotional distress claims accompanied by physical manifestations are bodily injuries sustained in the same accident and that UIM coverage for the accident is subject only to the policy's "Each Accident" limit of liability.

We affirm.[1]

### FACTS AND PROCEDURAL HISTORY

On July 14, 2002, Richard Jakupko was driving a vehicle in which his wife, Patricia, and their children, Nicholas and Matthew, were passengers. A vehicle driven by Brianne Johnson collided with the Jakupkos' vehicle, and the Jakupkos each sustained bodily injuries. Richard sustained the most serious injuries, including fractures in his cervical spine resulting in quadriplegia and a closed head injury result-ing in permanent mental deficits. After witnessing Richard's injuries, Patricia, Nicholas, and Matthew each suffered emotional distress and experienced physical manifestations of their emotional distress.

Johnson was at fault in causing the collision, and Safeco Insurance Company paid the Jakupkos $500,000, which was the policy limit under Johnson's policy. Because the Jakupkos' damages far exceeded that limit, they sought compensation through two insurance policies Richard owned with State Farm, a personal umbrella liability policy and an automobile insurance policy. State Farm paid the Jakupkos $1 million under the umbrella policy and an additional $100,000 under the UIM provisions of the automobile policy.

Richard's automobile insurance policy includes UIM coverage in the amount of $100,000 for "each person" and $300,000 for "each accident." The UIM provisions further provide in relevant part:

> **Bodily Injury**—means bodily injury to a **person** and sickness, disease or death which results from it.

\* \* \*

### UNDERINSURED MOTOR VEHICLE—COVERAGE W

We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **underinsured motor vehicle**. The **bodily injury** must be caused by accident arising out of the operation, maintenance or use of an **underinsured motor vehicle**.

\* \* \*

### Limits of Liability—Coverage W

1. The amount of coverage is shown on the declarations page under "Limits of

---

1. We heard oral argument in this case on September 6, 2006, at Meadowood Retire-ment Community in Bloomington.

Liability—W—Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person.* *"Bodily injury* to one *person"* includes all injury and damages to others resulting from this *bodily injury.* Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person," for all damages due to *bodily injury* to two or more *persons* in the same accident.

Appellant's App. at 13, 21, 23 (emphases original).

The Jakupkos filed a complaint against State Farm seeking an additional $200,000 under the UIM provisions in Richard's automobile policy. Specifically, Patricia, Nicholas, and Matthew assert that they are each entitled to "each person" compensation for their claims of negligent infliction of emotional distress. In discovery, the Jakupkos submitted Requests for Admissions to State Farm, and State Farm admitted in relevant part that the Jakupkos "have experienced physical manifestations of their emotional distress as a result of witnessing the serious injuries to Richard Jakupko in the collision which is the subject of this lawsuit, including uncontrollable crying, loss of appetite, sleeplessness, diminished concentration and fatigue." Appellant's App. at 113.

State Farm filed a motion for summary judgment alleging that the maximum amount payable under the UIM policy provisions was $100,000, the coverage limit for bodily injury to Richard, including all injury and damages to others "resulting from" that injury. The Jakupkos responded and also filed their own motion for summary judgment alleging that they were entitled to the aggregate "each accident" limit of $300,000 under the UIM provisions. Following a hearing, the trial court denied State Farm's motion for summary judg-ment and granted the Jakupkos' motion for summary judgment, finding that the Jakupkos are entitled to separate "each person" limits subject to the maximum "each accident" limit of $300,000.

In its findings and conclusions, the trial court noted there is no dispute that the Jakupkos' negligent infliction of emotional distress claims are included under State Farm's underinsured motorist coverage. But the trial court held that the provisions in the policy purporting to restrict State Farm's coverage on the Jakupkos' multiple claims to a single $100,000 "each person" limit of liability violate the underinsured motorist statute and are, thus, void. The trial court also found an "inescapable conflict" between the terms found in the definitions and Limits of Liability provisions in the policy. The court concluded that those ambiguities could not be harmonized and construed them in favor of the insured. Accordingly, the trial court concluded that the Jakupkos are entitled to separate "each person" limits subject to the "each accident" limitation. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Estate of Taylor ex rel. Taylor v. Muncie Med. Investors, L.P.,* 727 N.E.2d 466, 469 (Ind.Ct. App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Jesse v. American Cmty. Mut. Ins. Co.,* 725 N.E.2d 420, 423 (Ind.Ct. App.2000), *trans. denied.* Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a

matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co.*, 727 N.E.2d 790, 792 (Ind.Ct.App.2000).

The trial court entered findings and conclusions in support of summary judgment. Although we are not bound by the trial court's findings and conclusions, they aid our review by providing reasons for the trial court's decision. *See Ledbetter v. Ball Mem'l Hosp.*, 724 N.E.2d 1113, 1116 (Ind.Ct.App.2000), *trans. denied.* If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Id.*

■ An insurance policy is a contract and, as such, is subject to the same rules of construction as other contracts. *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind.2005). Interpretation of a contract is a pure question of law and is reviewed de novo. *Id.* If its terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning. *Id.* Courts should interpret a contract so as to harmonize its provisions, rather than place them in conflict. *Id.* at 252. When interpreting an insurance contract courts must look at the contract as a whole. *Id.*

### Negligent Infliction of Emotional Distress Claims

■ Initially, we must consider the nature of negligent infliction of emotional distress claims. The trial court found that

"there is no dispute under Indiana law under the above stated facts that the injuries of emotional distress that are claimed by the Plaintiffs may be maintained as independent causes of action." Appellant's App. at 3. The parties agree that negligent infliction of emotional distress is an independent tort. But *see Doe v. Lafayette Sch. Corp.*, 846 N.E.2d 691, 701 (Ind.Ct. App.2006) (citing *Ryan v. Brown*, 827 N.E.2d 112, 118 (Ind.Ct.App.2005), for proposition that negligent infliction of emotional distress is not an independent tort).[2]

Our supreme court first recognized negligent infliction of emotional distress as a distinct cause of action in *Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind. 1991). The court in *Shuamber* enunciated the modified impact rule as follows:

> When, as here, a plaintiff sustains a direct impact by the negligence of another and, *by virtue of that direct involvement* sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, ... such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

(Emphasis added). And our supreme court has extended that rule to permit a plaintiff to assert a negligent infliction of emotional distress claim where, although the direct impact test is not met, a bystander establishes " 'direct involvement' by proving that the plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with

2. To the extent that this court, in Doe, misunderstood the discussion of this issue in *Ryan,* we hereby reiterate that a negligent infliction of emotional distress claim is an independent tort. In *Ryan,* we did not hold otherwise, but merely discussed the appellees' assertion that negligent infliction of emotional distress

claims depended on the success of an underlying negligence claim. Because our discussion on that point in *Ryan* is somewhat confusing, especially given the caption entitled "Negligent Infliction of Emotional Distress is Not an Independent Tort," it is not surprising that Doe misconstrued that discussion.

a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise tortious conduct." *Groves v. Taylor*, 729 N.E.2d 569, 573 (Ind.2000).

As those and other Indiana Supreme Court cases demonstrate, negligent infliction of emotional distress claims are not vicarious or derivative of an underlying claim. While this court has recognized "a separate cause of action for *intentional* infliction of emotional distress, without the need for an accompanying tort," *City of Anderson v. Weatherford*, 714 N.E.2d 181, 185 (Ind.Ct.App.1999) (emphasis added; citing *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind.1991)), *trans. denied*, we have not previously held that proof of an underlying tort is not required before a plaintiff can proceed with a negligent infliction of emotional distress claim. The parties do not dispute that the Jakupkos' negligent infliction of emotional distress claims are "freestanding." We agree and hold that a negligent infliction of emotional distress claim is an independent tort not contingent upon proof of a separate, underlying tort.

### Interpreting the Policy

■ State Farm concedes that the Jakupkos' negligent infliction of emotional distress claims are valid and cognizable under Indiana law. But State Farm contends that "under the clear, unambiguous language of the policy, the Jakupkos' emotional injuries, which did not arise as a result of their own injuries received in the accident, are not compensable as separate claims under the policy's 'Each Person' coverage." Brief of Appellant at 12 (emphasis origi-

nal). State Farm asserts that "[t]his is because the 'Each Person' coverage only applies to 'bodily injury' sustained as a result of the accident, and emotional distress from witnessing another's injuries is not a 'bodily injury' as defined by the policy." *Id.*

Again, here, the policy defines "bodily injury" as "bodily injury to a *person* and sickness, disease or death which results from it." Appellant's App. at 13 (emphasis original). As this court observed in *Armstrong v. Federated Mut. Ins. Co.*, 785 N.E.2d 284, 292 (Ind.Ct.App.2003), *trans. denied*, that language "seems clear enough, and does not appear to include within its ambit emotional trauma not accompanied by physical injury." (Emphasis added; interpreting policy defining bodily harm as "bodily harm, sickness or disease"). But the Jakupkos' negligent infliction of emotional distress claims are not based upon emotional trauma unaccompanied by physical injury. Instead, they allege, and State Farm admits, that they "have experienced physical manifestations of their emotional distress as a result of witnessing the serious injuries to Richard Jakupko ... including uncontrollable crying, loss of appetite, sleeplessness, diminished concentration and fatigue."[3] Appellant's App. at 113.

Whether emotional distress accompanied by physical manifestations of that distress constitutes "bodily injury" under the State Farm policy in this case presents an issue of first impression in Indiana. Thus, we look to other jurisdictions for guidance. In *Trinh v. Allstate Ins. Co.*, 109 Wash. App. 927, 37 P.3d 1259 (2002),[4] *review de-*

---

3. The Jakupkos submitted State Farm's answers to their Request for Admissions as designated evidence in support of their summary judgment motion.

4. State Farm has litigated the same policy provision relevant to the same issue in other

jurisdictions. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Connolly*, 212 Ariz. 417, 132 P.3d 1197 (2006); *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736 (La.1994). In *Connolly* and *Crabtree*, the courts held that plaintiffs asserting negligent infliction of emotional distress

*nied,* after the plaintiff witnessed her friend's death in a car accident, she experienced emotional trauma accompanied by multiple physical ailments including headaches, nausea, hair loss, and weight loss. At issue was whether her injuries constituted "bodily injury" under the insurance policy, which defined bodily injury as "bodily injury, sickness, disease or death[.]" *Id.* at 1261. The Washington Court of Appeals observed that Washington follows the majority view that " 'in the context of purely emotional injuries, without physical manifestations, the phrase "bodily injury" is not ambiguous. Its ordinary meaning connotes a physical problem.' " *Id.* at 1261–62 (citation omitted).

The court observed, however, that "many courts have held that allegations of physically-manifested emotional distress fall within 'bodily injury' coverage in the insurance context." *Id.* at 1262 (citing several cases, including *General Star Indem. Co. v. Sch. Excess Liability Fund,* 888 F.Supp. 1022, 1027 (N.D.Cal.1995); *Garvis v. Employers Mut. Cas. Co.,* 497 N.W.2d 254, 257 (Minn.1993); *Voorhees v. Preferred Mut. Ins. Co.,* 128 N.J. 165, 607 A.2d 1255, 1261 (1992)). Persuaded by that body of precedent, the court held that

the term bodily injury "includes emotional injuries that are accompanied by physical manifestations." *Id.* at 1264.

Likewise, we hold that each of the Jakupkos' claims of emotional distress accompanied by physical manifestations of that distress constitutes a "bodily injury" under the policy.[5] We need not, and do not, decide whether a negligent infliction of emotional distress claim unaccompanied by physical manifestations constitutes "bodily injury" under this or any other insurance policy. We leave that question for another day.[6]

■ But our analysis does not end there. State Farm contends that even if the Jakupkos' negligent infliction of emotional distress claims are considered bodily injuries, they are only entitled to a single recovery under the limits of liability provision applicable to UIM coverage. State Farm relies on the policy provision that the amount of coverage for injuries to "each person" is the amount of coverage for "all damages due to *bodily injury to one person,*" which includes "all injury and damages to others resulting from this bodily injury." Appellant's App. at 23. State

---

are entitled to separate "each person" limits up to the "each accident" aggregate policy limits under the terms of the State Farm automobile policy.

5. *State Farm v. Connolly,* 212 Ariz. 417, 132 P.3d 1197, 1203 (2006), also involved the issue of whether a negligent infliction of emotional distress claim falls under the same definition of bodily injury in a State Farm policy. In *Connolly,* the court noted that State Farm "concede[d] that [the plaintiff] has suffered a 'bodily injury' within the meaning of the policy."

6. We disagree with the Jakupkos' contention that in *Wayne Twp. Bd. of School Comm'rs v. Indiana Ins. Co.,* 650 N.E.2d 1205 (Ind.Ct. App.1995), *trans. denied,* we "squarely held" that negligent infliction of emotional distress claims are included in "the insurance policy

definition of 'bodily injury, sickness or disease.' " Brief of Appellees at 20. We did not so hold, but merely noted that "the average lay person reading the policy would not conclude that mental anguish is excluded from the ambit of 'sickness.' " *Wayne Twp.,* 650 N.E.2d at 1211. Instead, we held that the emotional injury sustained by the victim of child molestation "results from a physical intrusion upon the child's body and therefore is bodily injury." *Id.* Given that the emotional injury in *Wayne Twp.* stemmed from a physical intrusion upon the plaintiff, our holding in that case does not resolve the issue of whether a plaintiff's emotional distress unaccompanied by physical manifestations or physical intrusion constitutes bodily injury under an insurance policy.

Farm contends that the Jakupkos' emotional injuries "resulted from" the injuries to Richard and, thus, are considered "bodily injury to one person" subject to the single cap.[7]

■ In considering this issue, we note not only that negligent infliction of emotional distress is an independent tort but that the injury occurs from a claimant's "direct involvement" in the negligent conduct. *See Conder v. Wood,* 716 N.E.2d 432, 435 (Ind.1999). It is this direct involvement that distinguishes negligent infliction of emotional distress from a derivative claim, such as loss of consortium. *See Durham Ex Rel. Estate of Wade v. U-Haul Intl.,* 745 N.E.2d 755, 764 (Ind.2001) (noting loss of consortium claim is derivative of injured spouse's personal injury claim; if spouse's claim fails, loss of consortium claim also fails). A claimant's direct involvement in the accident requires that a negligent infliction of emotional distress claim accompanied by physical manifestations be treated in the same manner as any other bodily injury claim. The Supreme Court of Iowa has described the direct causation between an accident and a bystander's emotional distress claim as follows:

> Unlike the loss of consortium claim, an injury the bystander suffers is not one that results from an injury to another person. Rather, the injury is *directly to the bystander* as a result of the bystander *seeing* the accident and *reasonably believing* that the direct victim of the accident would be seriously injured or killed.

*Pekin Ins. Co. v. Hugh,* 501 N.W.2d 508, 511 (Iowa 1993) (emphasis original).[8] Here, the Jakupkos' negligent infliction of emotional distress claims are not consequential damages, like loss of consortium claims, but damages that each of them sustained directly from the accident.

Construing the "each person" and "each accident" provisions in the Limits of Liability—W portion of the policy together, we conclude that the Jakupkos are only limited by the "each accident" provision. Again, those provisions are:

> Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person.* *"Bodily injury* to one *person"* includes all injury and damages to others resulting from this *bodily injury.* Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person," for all damages due to *bodily injury* to two or more *persons* in the same accident.

Appellant's App. at 23. We hold as a matter of law that the Jakupkos' emotional distress claims did not result from Richard's injuries but from their "direct in-

---

7. In support of that assertion, State Farm relies on the opinion of the United States Court of Appeals for the Seventh Circuit in *Allstate Ins. Co. v. Tozer,* 392 F.3d 950 (7th Cir.2004), which involved similar facts and policy provisions. The *Tozer* court concluded that because the plaintiffs' emotional distress claims were for damages sustained "as a result of" their brother's injuries, their claims were subject to a single cap. But the *Tozer* court first held that the negligent infliction of emotional distress claims did not constitute bodily injuries under the policy. *Id.* at 953. Because we hold otherwise on these facts, we

do not find the court's reasoning in *Tozer* persuasive here.

8. We note that Indiana law regarding negligent infliction of emotional distress is slightly different from Iowa law. Our supreme court established the tort of negligent infliction of emotional distress in *Shuamber* and established a separate "bystander rule" in *Groves v. Taylor,* 729 N.E.2d 569 (Ind.2000). The Jakupkos are not bystanders under *Groves,* but assert classic negligent infliction of emotional distress claims under *Shuamber.*

volvement" in the accident. *See Shuamber*, 579 N.E.2d at 456.

In other words, the Jakupkos' emotional distress injuries were not remote or secondary to Richard's injuries. Interpreting identical provisions in the same State Farm automobile policy, the Arizona Court of Appeals held that "if a person has a valid negligent infliction of emotional distress claim, she has suffered a 'bodily injury' arising from the 'same accident' as the other injured party." *State Farm Mut. Auto. Ins. Co. v. Connolly*, 212 Ariz. 417, 132 P.3d 1197, 1203 (2006). Likewise, the Montana Supreme Court has observed that under the same State Farm policy provisions, a plaintiff asserting a negligent infliction of emotional distress claim is "a separate person who received an independent and direct injury at the accident scene." *Treichel v. State Farm Mut. Auto. Ins. Co.*, 280 Mont. 443, 930 P.2d 661, 665 (1997). And in *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736, 742 (La. 1994), interpreting the same provisions, the Louisiana Supreme Court held that "where two or more persons suffer *bodily* injury in the same accident, the aggregate amount of coverage for each accident applies [ ] *even if* one or more persons' bodily injury 'results from' another's bodily injury."

We find the reasoning in these cases from other jurisdictions correlates exactly with the direct involvement element of negligent infliction of emotional distress claims as defined by the Indiana Supreme Court in *Shuamber* and *Groves*. Because the Jakupkos are each persons directly involved in the accident and sustained separate "bodily injuries" as defined in the policy, their negligent infliction of emotional distress claims are not confined to the single cap applicable to Richard's bodily injuries. Instead, the Jakupkos are "two or more persons [who sustained bodily injury] in the same accident" and fall under the "each accident" coverage. Thus, we conclude that the trial court did not err when it found that the Jakupkos are entitled to separate "each person" limits under the terms of the UIM provisions up to the maximum "each accident" limit of $300,000.

**Conclusion**

The development of Indiana case law on the tort of negligent infliction of emotional distress has been brisk, beginning with our supreme court's opinion in *Shuamber*. It may well be that State Farm's automobile insurance policy was not drafted with negligent infliction of emotional distress claims in mind. But in construing the policy we must take into account the body of case law, which recognizes negligent infliction of emotional distress as an independent tort. *See Ethyl Corp. v. Forcum-Lannom Assoc's, Inc.*, 433 N.E.2d 1214, 1220 (Ind.Ct.App.1982) (observing "it is well settled that, unless the contract provides otherwise, all applicable law in force at the time the agreement is made impliedly forms a part of the agreement without any statement to that effect.").

We hold that the definition of bodily injury in the policy includes negligent infliction of emotional distress claims when accompanied by physical manifestations of that distress. And we also hold that the Jakupkos' injuries were sustained as a result of their direct involvement in the accident. Thus, the Jakupkos' negligent infliction of emotional distress claims are subject only to the "each accident" limit of liability. The trial court did not err when it entered summary judgment in favor of the Jakupkos.

Affirmed.

SHARPNACK, J., and ROBB, J., concur.