**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant/Cross–Appellee,**

v.

**Asa DOWDY and Barbara Dowdy, Appellees/Cross–Appellants.**

Nos. S–12687, S–12698.

Supreme Court of Alaska.

Sept. 26, 2008.

Paul W. Waggoner, Law Offices of Paul Waggoner, Anchorage, for Appellant/Cross–Appellee State Farm.

Jonathon A. Katcher, Pope & Katcher, Anchorage, for Appellees/Cross–Appellants Asa and Barbara Dowdy.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

■ Additional per-person limits in an underinsured motorist policy are available to persons who are injured "in the same accident" as another person. The question in this case is whether this language encompasses parents who suffered severe emotional distress—including physical manifestations—upon viewing their daughter's body in the hospital after an automobile accident. We hold that it does not because "injury in the same accident" cannot be reasonably construed to refer to injuries that result from viewing a dead or injured person away from an accident scene.

## FACTS[1]

Asa and Barbara Dowdy suffered severe emotional distress as a result of the death of their seventeen-year-old daughter, Heather.[2] Heather was mortally injured in a collision with an underinsured intoxicated driver, Kirk Jackson. The Dowdys were not at the scene of the accident. When they learned of the accident they went to the hospital where Heather had been taken. The Dowdys first saw Heather at the hospital after she died.

The Dowdys asserted claims against Jackson's insurer for negligent infliction of emotional distress (NIED), loss of society, and punitive damages.[3] They settled for the available limits of Jackson's policy, $50,000. The Dowdys were personally insured by State Farm Mutual Automobile Insurance Company. Their policy included underinsured motorist (UIM) coverage with policy limits of $100,000 per person and $300,000 per accident.[4] State Farm paid Heather's estate UIM per-person limits. The present case involves the Dowdys' claim that separate per-person limits are available to them.

1. This case is before us for the second time. Unless otherwise noted, the following facts are taken from our previous decision. *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 111 P.3d 337 (Alaska 2005).

2. *Id.* at 338–39.

3. *Id.* at 339.

4. In our prior opinion in this case we stated that the Dowdys had three policies with $100,000/$300,000 limits each. *Id.* at 339. That was the representation made in the Dowdys' brief and it was not contested by State Farm. On the record as now presented there is uncertainty as to whether the Dowdys had three, or only one, $100,000/$300,000 policy. State Farm's complaint alleges that there is one policy and this allegation was admitted by the Dowdys. The superior court's decision on remand from this court and after arbitration only refers to one policy and to available limits of $100,000 per person for the Dowdys' NIED claims even though the arbitrators awarded $250,000 to each of the Dowdys. The judgment from which this appeal is taken likewise recognizes only one policy and awards to each of the Dowdys $100,000 plus interest, costs, and attorney's fees. The uncertainty as to whether there is one policy or three turns out not to be important in view of our decision in this case. For purposes of discussion, we assume based on the judgment that there was only one policy.

## PRIOR PROCEEDINGS

When we reviewed this case previously the question presented was whether policy coverage issues should be determined by arbitrators or by the superior court.[5] We held that they should be determined by the court.[6] We noted that where coverage issues are inextricably intertwined with issues of fault and liability that are to be arbitrated, such coverage issues also should be arbitrated even though they otherwise would not be subject to arbitration.[7] But we held that the coverage issues in this case were not inextricably intertwined with the liability and damages issues that were subject to arbitration.[8]

We identified two relevant coverage issues: (1) "whether the Dowdys suffered 'bodily injury'" and (2) "whether they were 'injured in the same accident' as their daughter under the terms of the policy."[9] We observed that the arbitrators' determination of fault and liability would not necessarily resolve these issues. As to the "in the same accident" point, we observed that the issue was clearly distinct from the issues to be decided by the arbitrators. As to whether the Dowdys suffered "bodily injury," we noted that this issue would not necessarily be resolved by the arbitrators, but stated that if the arbitrators did resolve the issue, their determination should be given binding effect by the court:

> The arbitrator's determination of fault and liability will not necessarily resolve the coverage issues in this case. The meaning of "in the same accident" under the policy

is a coverage question that is clearly distinct from the determinations to be made by the arbitrator. Because neither the NIED nor the loss of society claims require a showing of physical injury, it is not necessary for the arbitrator to determine whether the Dowdys suffered "bodily injury." The coverage issues are therefore not inextricably intertwined with the fault and liability questions to be arbitrated.

If the arbitrator finds liability on either or both claims, the assessment of damages may, but need not, include findings regarding whether the Dowdys suffered various physical symptoms alleged in their affidavits. Although whether the Dowdys suffered "bodily injury" under the policy remains a question for the court, the court should give collateral estoppel effect to fact determinations made by the arbitrator and these determinations, if made and necessary to the issues properly before the arbitrator, can serve to establish the underlying facts on which the court must base its coverage determination.[10]

We also addressed the question of whether the court's determination of coverage issues should take place before or after arbitration, and we left that question to the discretion of the court on remand.[11]

On remand the parties filed supplemental motions for summary judgment, which the superior court initially addressed before the issues of fault and liability were arbitrated. The court granted State Farm's motion for

**5.** *Id.* at 339–40.

**6.** *Id.* at 343.

**7.** *Id.* at 342.

**8.** *Id.* at 341–43. For the purpose of examining whether coverage issues were inextricably intertwined with the Dowdys' NIED claims, we discussed what the Dowdys would have to prove to prevail on those NIED claims:

> [T]he Dowdys must show that (1) the defendant negligently caused injury to a close relative, (2) the plaintiffs experienced shock as the result of a sudden sensory observation of the relative's injuries more or less contemporaneously with learning of the nature of the victim's injury, and (3) the harm suffered was severe, but need not have resulted in physical illness or injury.
> *Id.* at 343.

**9.** *Id.* at 343. The relevant clause in the State Farm policy giving rise to these issues provides as follows:

> The amount of coverage is shown on the declarations page under "Limits of Liability—U1—Bodily Injury, Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. "*Bodily injury*" to one *person*" includes all injury and damages to others resulting from this *bodily injury*. Under "Bodily Injury—Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

**10.** *Id.*

**11.** *Id.* at 342–43.

summary judgment with respect to the Dowdys' loss of consortium claims, ruling that those claims were derivative and would not be covered by separate per-person policy limits under the policy. With respect to the Dowdys' NIED claims, the court ruled that if the Dowdys were able to prove these claims to the satisfaction of the arbitrators, "they can collect under the 'per accident' policy limit, separate from the 'each person' limit paid to their daughter's estate."

In reaching this conclusion, the superior court addressed the two coverage issues discussed in our opinion. As to the question of whether the Dowdys were injured in the same accident as their daughter within the meaning of the policy, the court concluded that if the Dowdys were found to have valid NIED claims, they would necessarily satisfy the "in the same accident" requirement of the policy:

> There is no question that if the Dowdys are able to demonstrate a valid NIED claim for their shock upon seeing their daughter in the hospital, their injuries were part of the "same accident" in which Heather was killed. This is clear from the Alaska cases establishing the parameters of NIED claims by parents who did not actually observe the accident in which their child was injured. *Beck v. State, Dep't of Transp. & Pub. Facilities*, 837 P.2d 105, 109–11 (Alaska 1992); *Mattingly v. Sheldon Jackson Coll.*, 743 P.2d 356, 364–66 (Alaska 1987); *Tommy's Elbow Room, Inc. v. Kavorkian*, 727 P.2d 1038, 1040–43 (Alaska 1986). If the Dowdys show that their emotional shock resulted from observation of their daughter's injuries and death during the continuous flow of events in the immediate aftermath of the accident, and it cannot be said they had time to "steel themselves," then the Dowdys were injured "in the same accident." To this extent at least, the arbitrator should determine the underlying facts, since this will be necessary to determine whether the Dow-

dys have a valid NIED claim against the underinsured driver.

> Therefore, if the arbitrator determines that the Dowdys have valid NIED claims, then they necessarily were injured in the "same accident" as their daughter." [12]

As to whether the Dowdys suffered "bodily injury" within the meaning of the policy, the court noted that the Dowdys, in affidavits, described physical effects from the shock of seeing their daughter's body soon after she had died during emergency surgery. The court ruled that these affidavits raised a genuine issue of material fact as to whether the Dowdys suffered bodily injury, and that this factual dispute should be resolved at arbitration.[13]

A panel of three arbitrators decided the fault and liability issues. A majority of the panel found that the Dowdys had valid NIED claims, awarding Barbara and Asa Dowdy each $250,000, comprised of $100,000 in compensatory damages for severe emotional distress and $150,000 in punitive damages. In the process, the arbitrators found that both Dowdys suffered physical consequences from the shock of observing their daughter's body after the accident.

After the arbitrators made their award, the parties again moved for judgment in the superior court. State Farm argued that the policy did not cover what State Farm described as the Dowdys' "hospital NIED" claim. The Dowdys argued that judgment should be entered based on the arbitrators' award. The superior court denied State Farm's motion and granted the Dowdys' motion. The court decided that the State Farm UIM policy covered the Dowdys' NIED claims.

The court concluded based on the factual findings of the arbitrators that the parents both suffered "bodily injury." In accordance with its prior decision that if the Dowdys demonstrated valid NIED claims they were necessarily injured in the same accident as their daughter, the court reaffirmed that the

---

12. Case citations have been modified to reflect this court's preferred citation style. A footnote citation was omitted.

13. The superior court also decided that punitive damages, if awarded, would be covered by the Dowdys' UIM coverage subject to applicable limits.

"in the same accident" requirement of the policy was satisfied. Based on these conclusions the court decided that the Dowdys were entitled to recover $100,000 each under the separate UIM policy limits plus prejudgment interest, attorney's fees, and costs.

## CONTENTIONS ON APPEAL

State Farm appeals from the judgment on the merits. It raises two main points although it expresses each of them in a number of different ways. State Farm's first point is that the Dowdys do not have valid NIED claims and that to have valid claims the Dowdys would have had to have witnessed the accident or at least have viewed Heather at the accident scene before any material change occurred. Second, State Farm contends that the Dowdys did not suffer bodily injury in the same accident as their daughter, and therefore there was no remaining coverage available to them. Because we agree with State Farm's second point, we find it unnecessary to address the other points raised by State Farm on appeal.

The Dowdys cross-appeal, raising a question as to the award of attorney's fees. We do not discuss this question because it is mooted by our decision on State Farm's appeal.

## STANDARD OF REVIEW

This appeal involves a ruling on summary judgment and presents a question of law. We therefore apply a de novo standard of review, "adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[14] We also review de novo as a question of law the interpretation of insurance policy language.[15] Insurance policies are construed in such a way as to honor a lay insured's reasonable expectations.[16] Policy language is construed in accordance with ordinary and customary usage.[17] Ambiguities in an insurance policies are to be

construed most favorably to an insured, but ambiguities only exist when there are two or more reasonable interpretations of particular policy language.[18]

## DISCUSSION

### Were the Dowdys Injured in the Same Accident as Their Daughter Within the Meaning of the Policy?

The arbitration that was conducted in this case fell within the coverage of Alaska's Uniform Arbitration Act.[19] Under the act both findings of fact and legal conclusions are unreviewable, even in the case of gross error.[20] As already noted, much of State Farm's briefing is devoted to the proposition that the arbitrators erred as a matter of law in finding that the facts of this case supported an NIED claim. But we may not review this question because of the doctrine of arbitrable unreviewability. We thus confine this opinion to the question of policy coverage.

State Farm's argument on this point is that the coverage it provides is not necessarily coextensive with NIED liability. State Farm contends that even if the arbitrators' decision concerning the Dowdys' entitlement to NIED awards is correct (or incorrect but insulated from judicial review), per-person coverage under the UIM policy does not extend to the Dowdys' claims because the Dowdys were not injured in the accident with Heather.

The Dowdys argue that the "in the same accident" requirement of separate coverage is necessarily satisfied because the arbitrators have determined that the Dowdys have compensable NIED bystander claims and this determination is legally correct and, in any case, not subject to judicial review on its merits.

---

**14.** *State Farm Mut. Auto. Ins. Co. v. Lestenkof,* 155 P.3d 313, 316 (Alaska 2007).

**15.** *Simmons v. Ins. Co. of N. Am.,* 17 P.3d 56, 59 (Alaska 2001).

**16.** *Allstate Ins. Co. v. Falgoust,* 160 P.3d 134, 138 (Alaska 2007).

**17.** *Id.* at 139.

**18.** *Id.* at 138.

**19.** AS 09.43.010–.180.

**20.** The only exception is for legal conclusions that pertain to questions of arbitrability. *Kinn v. Alaska Sales & Serv., Inc.,* 144 P.3d 474, 487 (Alaska 2006).

In accordance with the standard of review that we employ in interpreting the language of insurance policies, the question here is, could a reasonable person expect that policy language providing coverage for "damages due to bodily injury to two or more persons in the same accident" would apply to the Dowdys who were not in the accident with their daughter, did not witness it, and did not come upon it shortly after it occurred? In our view this question must be answered in the negative.

The "accident" referred to by the policy in the context of this case is, of course, the collision between the vehicles driven by Kirk Jackson and Heather Dowdy. When it occurred Asa and Barbara Dowdy were miles away. They did not view the scene of the accident before Heather was transported to the hospital. The arbitrators found that the accident occurred at 3:00 p.m., but Barbara Dowdy did not learn of the accident until 5:00 p.m. She was permitted to view her daughter's body at the hospital sometime after 6:30 p.m. Asa Dowdy learned of the accident about 7:40 p.m., rushed to the hospital, and viewed Heather's body shortly after 8:00 p.m. To conclude that either Barbara or Asa Dowdy were injured "in the same accident" with Heather would stretch the meaning of that phrase beyond any generally accepted usage.

There is case law in other jurisdictions that lends support to this conclusion. In *Liberty Mutual Fire Insurance Co. v. Dennison*, the Supreme Court of Hawaii was presented with an NIED claim.[21] The plaintiff did not witness the auto accident in which his son was injured but he arrived at what was described as the "triage area" some thir-

ty minutes after the accident occurred.[22] The plaintiff suffered serious emotional distress as a result of viewing his son in the triage area.[23] Under a Hawaii statute, no tort recovery was available except for a person who sustained injury "in a motor vehicle accident."[24] The Hawaii Supreme Court stated that the issue before it was

> whether [the plaintiff], who was not a passenger in the ... car [in which his son was a passenger], did not witness the car accident, and arrived "down the street from the collision" approximately thirty minutes after the accident occurred, sustained his emotional distress "in" the car accident for purposes of [the statute in question].[25]

The court answered "no" to this question, but suggested that if the father had witnessed the accident the statute would be satisfied.[26] In reaching these conclusions, the *Dennison* court relied on an earlier Hawaii case, *First Insurance Co. of Hawaii v. Lawrence*,[27] which had similarly held that NIED claimants who did not at least witness the accident in which their relative was killed were not *in* the accident for purposes of the statute: "Although the Smiths claim that their emotional distress claims *arose out of* a motor vehicle accident in which Christopher was killed, none of the Smiths sustained their accidental harm *in* the accident."[28]

Both *Dennison* and *Lawrence* cited cases from other jurisdictions holding that separate per-person (or per-accident) limits were available to NIED plaintiffs who had directly witnessed an accident giving rise to their injuries. The cases relied on in *Dennison* are *Employers Casualty Insurance Co. v. Foust*,[29] *Crabtree v. State Farm Insurance*

---

21. 108 Hawai'i 380, 120 P.3d 1115 (2005).

22. *Id.* at 1117.

23. *Id.* at 1118.

24. *Id.* at 1120.

25. *Id.*

26. *Id.* at 1121–22.

27. 77 Hawai'i 2, 881 P.2d 489 (1994).

28. *Id.* at 495. Although the court in *Lawrence* was construing the language of a statute, the

court observed that similar policy language had the same meaning:

> Of particular significance is the fact that the phrase *"in* any one auto accident" contained in the policy coincides with the threshold requirement of [the statute] which, as previously noted, provides that persons or their representatives may bring an action in tort due to death or injury as long as they are "such person[s] *in* a motor vehicle accident." Again, none of the Smiths were *in* the accident.

*Id.* at 502–03.

29. 29 Cal.App.3d 382, 105 Cal.Rptr. 505 (1972).

Co.,[30] *Wolfe v. State Farm Insurance Co.,*[31] and *State Farm Mutual Automobile Insurance Co. v. Ramsey.*[32]

Of these cases only *Crabtree* explicitly discusses the "in the same accident" language. In *Crabtree* a woman witnessed an accident in which her husband was injured.[33] He was riding a motorcycle and she was following him in her car.[34] The Louisiana Supreme Court held that the "in the same accident" language in a State Farm policy was satisfied:

> Mrs. Crabtree saw her husband violently struck and severely injured by an oncoming car. She suffered mental pain and anguish precisely because she witnessed the event which caused the severe injuries to her husband. The same accident which caused Mr. Crabtree's "bodily injury" also caused Mrs. Crabtree's "bodily injury." [35]

In Louisiana, NIED bystander claims can be maintained by persons who view an accident that causes injury to a relative, or by persons who soon after such an accident come upon the accident scene. Such claims are referred to as *Lejeune* claims.[36] The Louisiana Supreme Court observed that it was not deciding whether a person who "meets the *Lejeune* requirements but who was not timely present at the immediate scene of the incident has incurred his or her 'bodily injury' 'in the same accident' as the 'bodily injury' to the original injured party." [37] Thus the court did not decide whether non-witness NIED claimants who come upon the scene of an accident soon after it occurs would satisfy the "in the same accident" requirement. The question in the present case is at least a full step removed from the question reserved in *Crabtree* because the Dowdys did not suffer their injuries as a result of coming upon the scene of the accident.

The Dowdys contend that our decision in *Allstate Insurance Co. v. Teel*[38] indicates that they satisfy the "in the same accident" requirement. *Teel* involved a coverage question arising out of an NIED claim. The plaintiff's son was injured in an automobile accident while a passenger in a car driven by O'Flanagan.[39] Plaintiff asserted an NIED claim under O'Flanagan's UIM policy issued by Allstate. Allstate claimed that coverage was not available to the plaintiff under its policy because she was not an "insured person" under O'Flanagan's UIM coverage which, under the policy, included "any other person who is legally entitled to recover because of bodily injury to ... an occupant of [the insured's] auto...." [40] Allstate contended that since the plaintiff had an NIED claim and this claim was a direct rather than a derivative claim under our case law, plaintiff's claim was not "because of bodily injury" to her son. We rejected this argument on the grounds that the "because of" language was broad enough to encompass an NIED claim:

> The injuries suffered by an individual entitled to recover under the bystander exception to NIED claims, though not derivative, are the natural and probable consequence of contemporaneously witnessing the bodily injury suffered by someone with whom they have a close relationship. We therefore conclude that a party who has met the burden of proving his or her NIED claim would satisfy the causal requirement between the accident and the injury that the Allstate policy requires.[41]

---

**30.**   632 So.2d 736 (La.1994).

**31.**   224 N.J.Super. 348, 540 A.2d 871 (App.Div. 1988).

**32.**   295 S.C. 349, 368 S.E.2d 477 (App.1988).

**33.**   *Crabtree,* 632 So.2d at 737.

**34.**   *Id.*

**35.**   *Id.* at 745.

**36.**   The case in which bystander claims were first recognized in Louisiana is *Lejeune v. Rayne Branch Hosp.,* 556 So.2d 559 (La.1990).

**37.**   *Crabtree,* 632 So.2d at 745 n. 19.

**38.**   100 P.3d 2 (Alaska 2004).

**39.**   *Id.* at 3.

**40.**   *Id.* at 4.

**41.**   *Id.* at 5.

Unlike in *Teel*, the policy language in the present case requires that a person seeking separate per-accident coverage be injured in the same accident. If the requirement for coverage were simply that the plaintiffs had suffered injury *because of* the injuries to their daughter, a substantially different coverage question would be presented.

The Dowdys argue that because the arbitrators found that they have valid NIED claims, this necessarily means that they are entitled to separate per-person UIM limits. They base this conclusion on *Crabtree*, discussed previously, and three other opinions involving State Farm policies decided in other jurisdictions. The other cases relied on by the Dowdys are *State Farm Mutual Automobile Insurance. Co. v. Jakupko*,[42] *State Farm Mutual Automobile Insurance Co. v. Connolly ex rel. Connolly*,[43] and *State Farm Mutual Automobile Insurance Co. v. D.L.B. ex rel. Brake*.[44] But each of these cases involved NIED claims of witnesses to an underlying accident.[45] It was therefore possible to say, as the Louisiana court did in *Crabtree*, that the mental distress that the witnesses suffered was an injury that occurred in the same accident that physically involved the relatives of the NIED plaintiffs.[46] But since the Dowdys were far removed from the accident involving their daughter, the same conclusion is not possible here.

The Arizona case cited by the Dowdys, *Connolly*, makes it clear that in Arizona the "in the same accident" requirement is satisfied because NIED plaintiffs must be in the zone of danger to be entitled to a recovery:

Significantly, Arizona cases require that the negligent infliction of emotional distress plaintiff must have been in the "zone of danger" to recover. Thus, the successful plaintiff has been directly affected by the tortfeasor's negligence. Unlike a loss of consortium claim, in which the tortfeasor's injury to one person indirectly affects another person by affecting the emotional, physical, and/or financial relationship between the injured party and the plaintiff, a plaintiff who successfully asserts a negligent infliction of emotional distress claim has directly experienced the tortfeasor's negligence, and that negligence has caused the plaintiff to suffer such severe emotional distress that physical injury results. The tortfeasor did not merely affect the plaintiff by injuring someone close to the plaintiff, so the injury to the plaintiff is *not* solely due to the bodily injury to another person. Instead, the negligent infliction of emotional distress plaintiff's injury is due to the unique experience of having witnessed, at such close range as to be in the "zone of danger," the event that caused the injury to the other person. In other words, the negligent infliction of emotional distress claimant's physical injury results from the accident, not solely from the injury to the other person.

In short, if a person has a valid negligent infliction of emotional distress claim, she has suffered a "bodily injury" arising from the "same accident" as the other injured party.[47]

In Alaska, unlike Arizona, the NIED tort is not limited to the zone of danger. Similarly, unlike the other jurisdictions relied on by the Dowdys, the NIED tort is not limited to witnesses to an accident. Thus it is not possible to say that all plaintiffs with NIED claims that are valid under Alaska law are necessarily injured in the same accident as their injured relatives.

Our focus when this case was before us previously was on the question of whether coverage issues should be decided judicially or at arbitration. We did not decide whether

---

42. 856 N.E.2d 778 (Ind.App.2006), *vacated by State Farm Mut. Auto. Ins. Co. v. Jakupko,* 881 N.E.2d 654 (Ind.2008).

43. 212 Ariz. 417, 132 P.3d 1197 (App.2006).

44. 862 N.E.2d 678 (Ind.App.2007), *vacated by State Farm Mut. Auto. Ins. Co. v. D.L.B. ex rel. Brake,* 881 N.E.2d 665 (Ind.2008).

45. In *Jakupko* the NIED claimants were passengers in the automobile involved in the underlying accident at the time of the collision. *Jakupko,* 856 N.E.2d at 780.

46. *See Crabtree,* 632 So.2d at 745.

47. *Connolly,* 132 P.3d at 1203 (citations omitted).

the absence of coverage could be determined as a matter of law. But that is the question now and under the facts and circumstances presented it seems plain that the "in the same accident" language of the policy cannot reasonably be construed to cover the Dowdys' NIED claim. The Dowdys were not injured in an accident. Rather, they were injured as a result of the death of their daughter in an accident. The policy provided coverage for their resulting injuries but only under their daughter's per-person coverage. Since the limits for that coverage have been exhausted, they have no remaining policy coverage under which they may recover damages.

## CONCLUSION

For the reasons stated the judgment of the superior court is REVERSED.

WINFREE, Justice, not participating.