Idan (John) FILIP and Valaria Filip, Appellants–Plaintiffs,

v.

Carrie BLOCK and 1st Choice Insurance Agency, Appellees–Defendants.

No. 75A05–0601–CV–10.

Court of Appeals of Indiana.

Dec. 11, 2006.

Robert W. Mysliwiec, South Bend, IN, Attorney for Appellants.

Philip E. Kalamaros, Hunt, Suedhoff, Kalamaros, LLP, St. Joseph, MI, Attorney for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Idan Filip (John) and Valaria Filip (Valaria) (collectively, the Filips) appeal the trial court's grant of summary judgment in favor of Appellees–Defendants, Carrie Block (Block) and 1st Choice Insurance Agency (1st Choice) (collectively, Appellees), finding that Appellees were entitled to judgment as a matter of law as they had not breached their duty to

advise the Filips in the procurement of insurance coverage.[1]

We reverse and remand.

## ISSUES

The Filips raise three issues on appeal which we restate as follows:

(1) Whether the Filips, who failed to designate materials in support of their opposition to Appellees' motion for summary judgment, can rely on Appellees' designated evidence as enumerated in their motion for summary judgment or whether the Filips are limited to the designated evidence as used by Appellees in their accompanying Memorandum of Law;

(2) Whether the Filips' negligence action brought against Appellees, arising out of a fire loss which occurred in 2003, is barred by the two-year statute of limitations; and

(3) Whether Block breached her duty, ordinary or fiduciary, to advise the Filips in their procurement of insurance coverage and subsequently to notify them that the acquired coverage was inadequate.

## FACTS AND PROCEDURAL HISTORY

In December of 1998, the Filips purchased the Sundown Apartments (Apartments) located at 3030 South U.S. Highway 35, in Knox, Indiana, from Coet Bailey (Bailey). The Filips lived at the Apartments and rented out the five additional units. At the time of purchase, the Filips were advised that the Apartments were insured with Auto Owners Insurance Company (Auto Owners) and that the insur-

ance was handled by Block, an insurance agent for 1st Choice. Accordingly, in January of 1999, the Filips met with Block and informed her that they wanted to continue the same insurance coverage which had been in effect when the property was owned by Bailey. At the meeting, Block filled out the application for insurance, which included $250,000.00 in coverage on the building to be valued at actual cash value and $25,000.00 on personal property to be valued at replacement cost. Valaria signed the insurance application without reading it.

In January of 2003, the Filips called Block and indicated that they had made some improvements to the Apartments and wanted to increase their coverage limits. Pursuant to the phone call, the building's limits were increased from $250,000.00 to $350,000.00. When the change was made, Auto Owners changed the valuation from actual cash value to replacement cost. However, Auto Owners caught the mistake and changed the policy back to actual cash value.

On April 8, 2003, a fire occurred which substantially destroyed the Apartments. On September 23, 2003, the Filips filed a Complaint against Block and 1st Choice, alleging that Block and 1st Choice had been negligent in advising them on the selection of adequate insurance. The Complaint enumerated the following items of damage:

A. The buildings were not insured under a replacement cost coverage, and the actual value coverage provided in the policy was approximately $50,000.00 less than the cost required to rebuild the units.

---

1. We heard oral arguments in this case on October 23, 2006 at University Place Retirement Community in West Lafayette, Indiana. We commend counsel for their excellent pres- entations and thank University Place Retirement Community for their hospitality in hosting this oral argument.

B. The policy only provided limits of $25,000.00 on business personal property which was at least $17,000.00 less than was required to replace that business personal property.

C. The policy provided no coverage for personal property in the unit that the [Filips] used as a dwelling, resulting in an uninsured loss of $128,000.00.

D. The policy failed to provide business interruption insurance, which resulted in an uninsured loss of at least $30,000.00.

(Appellants' App. p. A–36).

Thereafter, on August 1, 2005, Appellees filed their Motion for Summary Judgment. On October 3, 2005, the Filips filed a Memorandum in Opposition, Designation of Issues of Fact and Designation of Evidence. On October 6, 2005, Appellees filed a Motion to Strike the Filips' response as untimely. On October 14, 2005, the trial court held a hearing on Appellees' Motion to Strike and Motion for Summary Judgment. At the hearing, the trial court granted Appellees' Motion to Strike and limited the Filips' argument to the facts designated in Appellees' Motion for Summary Judgment. On December 9, 2005, the trial court entered findings of fact and conclusions of law granting Appellees' Motion for Summary Judgment.

The Filips now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 47 (Ind.Ct.App.2004). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *See Ayres v. Indian Heights Volunteer Fire Dep.'t, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

We observe that in the present case, the trial court entered detailed and helpful findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com*, 816 N.E.2d at 48. However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *Id.*

### II. *Designated Materials*[2]

First, the Filips contend that the trial court erred as a matter of law when it refused to consider all evidence designated by Appellees, and instead only examined the designated evidence as referenced in

---

**2.** On May 30, 2006, Appellees filed a Motion to Strike, requesting this court to strike those portions of the Filips' brief where the Filips had relied on designated materials that were not specifically referenced in Appellees' Memorandum of Law. In essence, Appellees make the same argument here as in their Motion to Strike. In light of our decision with regard to Designated Materials, we hereby deny Appellees' Motion to Strike.

Appellees' Memorandum of Law. The Filips' main allegation centers around what designated evidence the trial court may rely upon in absence of their own timely designation of evidence.[3]

■ Indiana Trial Rule 56(C) requires each party to a summary judgment motion to "designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." This designation requirement promotes the expeditious resolution of lawsuits and conserves judicial resources by relieving the trial courts from the burden of searching the record when considering summary judgment motions. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993). More significantly, T.R. 56(H) specifically prohibits appellate courts from reversing a grant of summary judgment "on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court." T.R. 56(H).

■ The language of T.R. 56(C), however, permits the parties to determine how to designate, which has engendered a lack of consensus both with the bench and bar as to what must be done to designate evidentiary materials to the trial court in support of or in opposition to a motion for summary judgment. *National Bd. of Examiners for Osteopathic Physicians and Surgeons, Inc. v. American Osteopathic Ass'n,* 645 N.E.2d 608, 615 (Ind.Ct.App.1994); *Ling v. Stillwell,* 732 N.E.2d 1270, 1276 (Ind.Ct.App.2000), *trans. denied.* Nevertheless, consensus is clear that the rule

requires specificity. *National Bd. of Examiners for Osteopathic Physicians and Surgeons, Inc.,* 645 N.E.2d at 615. Thus, designating pleadings, discovery materials, and affidavits in their entirety will fail to meet the specificity required by T.R. 56(C). *Id.*

■ Here, the Filips failed to designate any evidence, and instead they now attempt to use the evidence designated by Appellees (including the designated exhibits) to show that the Appellees failed to make a *prima facie* case that no genuine issues of material fact exist. As we already stated in *Templeton v. City of Hammond,* 679 N.E.2d 1368, 1371 (Ind.Ct.App. 1997), the failure to timely submit evidence in opposition of a motion for summary judgment is not necessarily the end of the litigious road.

> The party moving for summary judgment still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. If the movant fails to make this *prima facie* showing, then the entry of summary judgment in favor of the movant is precluded, regardless of whether the non-movant did or did not designate facts and evidence in response to the motion for summary judgment.

*Id.* at 1371. *See also Monroe Guaranty v. Magwerks,* 829 N.E.2d 968, 975 (Ind.2005).

Nevertheless, Appellees appear to argue that even though entire pages were designated in its motion of summary judgment (without further specification), only the specific sentences as referenced in their memorandum of law can be relied on, and

---

**3.** The record shows that the Filips filed their motion in opposition to Appellees' Motion for Summary Judgment and Memorandum of Law outside the time period provided in the Indiana Trial Rules. In reply to Appellees' Motion to Strike, the trial court struck the Filips' Memorandum of Law and Designation of Evidence. The Filips do not contest this ruling on appeal.

not the entire page. Appellees do not cite to any case law in support of their argument; however, during oral argument Appellees focused our attention on *Plummer v. Board of Com'rs of St. Joseph Co.*, 653 N.E.2d 519 (Ind.Ct.App.1995), *trans. denied.* In reliance on *Plummer,* Appellees asserted that the prevailing custom in designating evidence has evolved into a convention whereby a broader designation in the motion is included, with a more detailed designation to a specific line in the accompanying memorandum.

Unlike Appellees, we do not read *Plummer* to stand for this custom. Citing to *Pierce v. Bank One–Franklin, NA,* 618 N.E.2d 16, 19 (Ind.Ct.App.1993), *trans. denied,* the *Plummer* court noted that "a proper designation consists of: (1) a list of the factual matters which are or are not in dispute, (2) supported by a specific designation to their location in the record, and (3) a brief synopsis of why those facts are material." *Plummer,* 653 N.E.2d at 521. Based on the facts before it and concerned about the sheer volume of designated evidence to sift through, the *Plummer* court decided that because both parties designated entire portions of the record in their respective motion and response, it would conduct its review from the more detailed references to the record as provided in the accompanying memoranda. *Id.*

■ More instructive is the practice described in *Pierce* where the court held that:

[T]he better practice is to clearly and succinctly state the factual issues and the pertinent parts of the record which are directly relevant to those issues in their motions or responses, *not necessarily in the supporting briefs.*

While T.R. 56 does not set out a specific form and while a brief or memorandum may be submitted in support of the motion, succinctly listing every issue of material fact and supporting each listing with a precise reference to the relevant section of the record would greatly assist the trial judge and this court in correctly ruling upon such motions. In short, a party should file a list of the factual matters which are or are not in dispute, a specific designation to their location in the record, and a brief synopsis of why those facts are material. *The brief or memorandum in support of or in opposition to the summary judgment motion would then be helpful to further enlighten the court as to the law supporting their position.*

*Pierce,* 618 N.E.2d at 19 (emphasis added). Accordingly, as stated by the *Pierce* court and we agree, the main designation of evidence should take place in the motion and response, with the accompanying briefs or memoranda playing merely a supporting, persuasive role. This interpretation is also compliant with the rationale of T.R. 56 which is focused on substantially limiting the scope of materials to sift through to determine the propriety of a summary judgment motion. *See Rosi,* 615 N.E.2d at 434. Accepting Appellees' argument would force us to examine both the motion and brief and then piece both documents together before realizing the complete scope of designated evidence.

Here, Appellees designated the "following evidentiary materials relied upon" in their Motion for Summary Judgment:

1. Plaintiff's Complaint, ¶¶ 1, 2, 4, 9, 12, attached as Exhibit 1.

2. Deposition of [Block], taken April 2, 2004, pp. 10–19, 22–27, 37, 50, attached hereto as Exhibit 2.

3. Deposition of [Valaria], taken February 7, 2005, pp. 18–25, 43–47, 56, attached hereto as Exhibit 3.

4. Deposition of [John], taken February 7, 2005, pp. 19–77, 84–93, 102–103, attached as Exhibit 4.

5. Deposition of Katherine Cunningham, taken June 29, 2005, pp. 51–53, and Exhibits A 1–A 16 attached hereto, collectively attached as Exhibit 5.

6. [The Filips'] Answers to [Appellees'] Interrogatories, nos. 6, 7, 11.

(Appellant's App. pp. A16–A17).

In line with our decision in *Pierce*, we conclude that without further clarification to specific sentences in the motion, Appellees designated the entire page as evidence for our review. Even though Appellees narrowed their designated evidence to specific sentences in the accompanying memorandum, we solely refer to the memorandum as a synopsis to enlighten this court as to the party's argument, not as a vehicle for designating evidence in support of the motion for summary judgment. Therefore, we agree with the Filips that absent any further specification in Appellees' Motion, the entire page is designated and available to establish the propriety of the summary judgment. Thus, we conclude that the trial court erred as a matter of law when it refused to consider all evidence designated by Appellees, and instead only examined the designated evidence as referenced in Appellees' Memorandum of Law.

### III. *Statute of Limitations*

■ Next, the Filips contend that the trial court erred as a matter of law by concluding that their claim is barred by the two-year statute of limitations. Indiana Code section 34–11–2–4 states that "an action for ... (2) injury to personal property must be commenced within two (2) years after the cause of action accrues." In essence the parties' arguments focus on the accrual date for the statute. The Filips assert that the date on which the injury from the wrongful act occurred commences the two-year period, with "injury" being the fire which occurred on April 8, 2003. As such, the Filips claim that the filing of the Complaint on September 23, 2003 was timely. Conversely, Appellees contend that the cause of action accrued when the Filips knew, or in the exercise of ordinary diligence, could have discovered that an injury had been sustained due to another's act. Appellees characterize the "injury" as the execution of the insurance policy in January of 1999. At that time, Appellees maintain, the Filips could have become aware that they were not covered for business interruption or loss of personal items. Therefore, they contend that the Filips' Complaint was filed well outside the two-year period.

■ As both parties concede that the nature or substance of the cause of action is negligence in failing to obtain a particular type of insurance coverage, the two-year statute of limitations applies. *See Strauser v. Westfield Ins. Co.*, 827 N.E.2d 1181, 1185 (Ind.Ct.App.2005). When a cause of action accrues is typically a question for the courts to determine. *Id.* In this regard it is well established that Indiana follows the "discovery rule." *Id.* In other words, a cause of action for a tort begins to run when a party knows, or in the exercise of ordinary diligence could discover that an injury had been sustained as a result of the tortious act of another. *Id.* Furthermore, for a cause of action to accrue, it is not necessary that the extent of the damage be known or ascertainable, but only that damage has occurred. *Id.* (quoting *Butler v. Williams*, 527 N.E.2d 231, 234 (Ind.Ct.App.1988), *trans. denied*).

In *Butler*, the Williams were injured in an automobile accident with a man who had become intoxicated while a patron at a tavern owned by the Morgans. *Butler*,

527 N.E.2d at 232. Butler, an insurance agent, had procured an insurance policy for the tavern through Hawkeye Security Insurance Company, but the policy expressly excluded coverage for liability incurred as a result of serving alcoholic beverages. *Id.* at 232–33. When the Williams sued the Morgans, Hawkeye Insurance notified the Morgans that their policy did not cover the claim against them. *Id.* at 233. Thereafter, the Morgans executed an assignment of claims wherein they assigned to the Williams any claims they had against their insurance carrier for failing to recommend insurance coverage for alcohol-related liability. *Id.* After judgment was entered against the Morgans, the Williams, by way of the assignment, brought suit against the agent Butler, and Hawkeye Insurance. *Id.* The Williams argued that the claim they were asserting accrued when the owners of the tavern had judgment entered against them. *Id.* However, the *Butler* court held that:

> The latest date on which the Morgans' cause of action against their insurer and insurance company could have accrued was [ ], when Hawkeye [Insurance Company] notified the Morgans that their insurance policy did not cover the Williams' accident. Clearly, on that date the Morgans knew about the Williams' claim and were made aware that their insurance policy did not include dram shop liability coverage.

*Id.* at 234.

Based on *Butler's* holding, we reached a similar result in our recent decision in *Strauser* where plaintiffs alleged that an insurance agent failed to procure insurance to cover liability concerning pasture land from which horses escaped and subsequently collided with a motor vehicle. *Strauser*, 827 N.E.2d at 1181. In line with *Butler*, the *Strauser* court held that the accrual of the two-year statute of limitation commenced on the date the claim was denied. *Id.* at 1185.

However, in support of their argument that the accrual date is the execution date of the insurance policy, Appellees rely on *Page v. Hines*, 594 N.E.2d 485 (Ind.Ct. App.1992). The *Page* court was presented with the similar issue as to when insureds discovered, or reasonably should have discovered, the insurance agent's alleged negligent failure to procure insurance coverage. *Id.* at 485. As in the instant case, the Pages designated evidence that they had not read the insurance policy when they received it in the mail. *Id.* at 486. Evidence showed that the Pages had informed their insurance agent that they desired a policy with the same coverage as their prior policy. *Id.* However, as the Pages discovered later, the policy failed to provide employer liability coverage. *Id.* Relying on the general rule that "a cause of action accrues ... when the resultant damage of a negligent act is susceptible of ascertainment," the *Page* court was faced with Hines' argument, similar to the one made by Appellees in the instant case, that as the Pages had a duty to read the insurance policy, they should have discovered the lack of employer liability coverage at the time the policy took effect. *Id.* Accordingly, Hines maintained the cause of action accrued when the policy was entered into. *Id.*

Building upon *Village Furniture, Inc. v. Associated Insurance Managers, Inc.*, 541 N.E.2d 306, 308 (Ind.Ct.App.1989), *reh'g denied, trans. denied,* the *Page* court also stated that "although the insured may have a duty to acquaint himself with his policy, an exception has been acknowledged where the insured reasonably relied upon an agent's representations." *Id.* As the Pages claimed reliance on Hines' representation that they had employer liabili-

ty coverage, while Hines denied these representations, we concluded in *Page* that a question of material fact existed as to whether the representations were made and, if so, the Pages reasonably relied upon them. *Id.* at 488.

However, tracing the *Page* decision back to its underlying roots of *Village Furniture*, it is clear that the issue presented to the *Village Furniture* court focused on an insured's duty to acquaint himself with the policy's contents in light of a coverage question. The *Page* court took *Village Furniture's* duty together with its language and, without more, incorporated it into the realm of statute of limitations. Accordingly, in light of Indiana's established case law applying the discovery rule in statute of limitations cases, we find that *Butler* and its progeny reach the better result.

Thus, applying the *Butler* and *Strauser* reasoning to the present case, we conclude that the Filips timely filed their Complaint. Although the designated evidence fails to include the date on which Auto Owners denied the Filips' claim for damages, the evidence clearly supports that the fire took place on April 8, 2003 with the Filips filing their Complaint approximately five months later, *i.e.*, on September 23, 2003 which is clearly within the two-year statute of limitations. Therefore, we reverse the trial court's ruling.

### IV. *Standard of Care*

▆ Lastly, the Filips contend that the trial court erred in granting summary judgment on the designated evidence on their claim that Block failed to procure adequate coverage. Specifically, the Filips claim that they relied on Block to select insurance coverage that would adequately protect them in case of loss. In their brief, the Filips adamantly assert that they are not contending that they were entitled to advice from Block, instead, they claim

that "an insurance agent, in the exercise of reasonable care, should identify the insured's desires with regard to insurance and explain to the insureds [the] various coverages available to meet those desires." (Appellants Br. p. 26).

▆ An insurance agent who undertakes to procure insurance for another is an agent of the insured and owes the insured a general duty to exercise reasonable care, skill, and good faith diligence in obtaining insurance. *American Family Mut. Ins. Co. v. Dye*, 634 N.E.2d 844, 847 (Ind.Ct.App.1994), *reh'g denied, trans. denied.* However, the agent's duty may extend to the provision of advice "only upon a showing of an intimate long term relationship between the parties or some other special circumstance." *Id.* (quoting *Craven v. State Farm Mut. Auto. Ins. Co.*, 588 N.E.2d 1294, 1296 (Ind.Ct.App.1992), *reh'g denied*). An insurance agent's duty to advise the insured of his insurance needs may arise even where the insurer is not required by law to provide a certain type of coverage. *Id.* In other words, the agent's duty to advise the insured of the availability of certain coverage is not dependent upon the insurer's duty to offer the insured such coverage. *Id.* The existence of a duty is a question of law for the court and depends, in part, on the relationship between the parties. *American Family Mut. Ins. Co.*, 634 N.E.2d at 848.

▆▆ Before addressing Filips' claim which appears to focus on an alleged duty of inquiry and advice, we note that the first and foremost duty of an insurance agent is to exercise reasonable care in procuring adequate insurance. If an insurance agent undertakes to procure insurance and through his neglect and fault fails to do so, he is liable to the insured for any damage resulting therefrom. *Steward v. City of Mt. Vernon*, 497 N.E.2d 939, 942

(Ind.Ct.App.1986). Here, the designated evidence establishes that during their meeting with Block in January of 1999, the Filips insisted on acquiring the same insurance coverage that had been in effect when the property was owned by Bailey, the previous owner. The record reflects that Bailey had the building insured for $225,000.00 with a 100% co-insurance. However, the initial policy procured by Block for the Filips carried a $250,000.00 building insurance with only 90% co-insurance.

Furthermore, during the initial meeting with Block, Valaria specifically asked if the contents of her dwelling would be covered. According to Valaria's deposition, Block replied "Yes, you will be covered." (Appellant's App. p. A59). Block also acknowledged that it was her belief that the contents of the dwelling would be covered "under the $25,000.00 of personal property." (Appellant's App. p. A43). The evidence further establishes that on March 27, 2003, approximately two weeks prior to the fire, Auto Owners advised Block that the Filips had no coverage on the contents located in their dwelling. Despite this caution, there is no designated evidence reflecting that Block informed the Filips prior to the fire. Therefore, while it is clear that Block was not only negligent in failing to procure the insurance requested by the Filips, it also appears she violated the implied corresponding duty to notify the applicant in the event an agent is unable to obtain insurance. *Steward,* 497 N.E.2d at 942.

In response, Appellees dispute that Block breached her duty. As such, Appellees refer to established case law, revolving around the issue of material representations or omissions by either the insured or the agent in the application for coverage, which elaborates that even though the insured did not read the application, by signing it he becomes responsible for it. *See, e.g., Federal Kemper Ins. Co. v. Brown,* 674 N.E.2d 1030, 1035 (Ind.Ct. App.1997), *reh'g denied, trans. denied.* Thus, Appellees conclude that as the Filips signed the application without reading it and accepted the policies and renewals as written, they cannot now complain that Block somehow breached her duty of reasonable care. We find Appellees' reliance on this particular line of cases misplaced. In the case at bar, neither Block nor the Filips claim to have made misrepresentations with the purpose of inducing an insurance company into issuing an insurance policy.

Insofar the Filips may have had a duty to familiarize themselves with the clauses of the insurance policy, case law recognizes an exception to this duty. In this regard, we held in *Village Furniture, Inc.,* 541 N.E.2d at 308 (quoting *Burns v. Rockford Life Ins. Co.,* 740 F.2d 542, 544 (7th Cir. 1984)), that reasonable reliance upon an insurance agent's representations can override the duty of an insured to acquaint himself with the policy:

It is true that courts in Indiana and elsewhere, realizing that many people do not read their insurance policies and, perhaps even more important, do not do so because policies are unreadable, have held that the agent's oral representations at the time of sale can override the written terms of the policy. If the agent insists to the prospective purchaser that the policy will insure against a hazard, ..., that the prospect is particularly concerned about, and the hazard materializes, the company may be estopped to plead the terms of the policy because the strength of the agent's oral assurances lulled the prospect into not reading, or reading inattentively, dense and rebarbative policy language.

*See also Anderson Mattress Co. v. First State Ins.,* 617 N.E.2d 932, 940 (Ind.Ct.

App.1993), *trans. denied* (noting that, although older cases imposed "an almost unconditional duty on the purchaser of a policy to acquaint himself with its contents and to understand them," more recent cases have "recognized exceptions to the rule").

The designated evidence before us indicates that while Valaria asked some general questions regarding the policy's contents after specifying the insurance policy she desired to procure, Appellees refer us to evidence presumably establishing that the Filips used to shop around and compare various insurance policies and companies to insure their other property. Consequently, in light of this designation indicating that the Filips should be perceived as well-versed insurance procurers, we conclude that a genuine issue of material fact exists as to whether the Filips reasonably relied on Block's representations. As we reverse the instant case on Block's duty to procure insurance, we do not need to review Filips' claim whether Block had a duty to expressly inquire as to what the Filips required and to advise them accordingly.

### CONCLUSION

Based on the foregoing, we find that (1) the Filips can rely on Appellees' designated evidence as enumerated in Appellees' motion for summary judgment; (2) the Filips' negligence action was brought within the two-year statute of limitations; and (3) there is a genuine issue of material fact as to whether the Filips reasonably relied on Block's representations when procuring their insurance policy.

Reversed and remanded.

KIRSCH, C.J., and ROBB, J., concur.