**Austin J. ELLIOTT, b/n/f William K. Elliott, and Amber Elliott, b/n/f William K. Elliot, Appellants–Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, Appellee–Defendant.**

No. 49A02–0604–CV–363.

Court of Appeals of Indiana.

Jan. 9, 2007.

Michael L. Hanley, Vernon J. Pertri & Associates, Indianapolis, IN, Attorney for Appellants.

Richard P. Samek, Larry L. Barnard, Carson Boxberger LLP, Fort Wayne, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Austin J. Elliott (Austin), b/n/f William Elliott, and Amber Elliott (Amber), b/n/f William Elliott (collectively, Appellants), appeal the trial court's grant of Partial Summary Judgment in favor of Appellee–Defendant, Allstate Insurance Company (Allstate), finding that Allstate was entitled to judgment as a matter of law because Appellants' negligent infliction of emotional distress claims, which arose from witnessing Amanda Elliott's (Amanda) injuries, are subject to the same "each person" limit of liability as Amanda's personal injury claim.

We reverse and remand for further proceedings.

### ISSUE

Austin and Amber raise four issues on appeal which we consolidate and restate as the following single issue: Whether Allstate's policy for uninsured motorist coverage (UIM) confines Appellants' negligent infliction of emotional distress claim to a single "each person" limit of liability.

### FACTS AND PROCEDURAL HISTORY[1]

On July 8, 2000, fifteen-year-old Amber and three-year-old Austin were passengers in a car driven by Amanda. Amanda is Amber's sister and Austin's mother. A vehicle driven by Andrea Carmona collided with Amanda's vehicle and Amanda, Amber, and Austin each sustained bodily injuries. Amanda suffered near fatal injuries resulting in severe brain damage which rendered her comatose for six weeks. Since regaining consciousness, Amanda requires permanent medical care as she is unable to take care of herself. After witnessing Amanda's injuries, Amber and Austin each suffered emotional distress with Austin also exhibiting physical manifestations of his emotional distress.

At the time of the collision, Allstate was Amanda's automobile insurance provider, which also included UIM coverage in the amount of $25,000 for "each person" and

---

1. We encourage Allstate's counsel to acquaint himself with Ind. Appellate Rule 46(B)(1), which specifies that even though Appellee's brief may omit the statement of facts and statement of the case, it shall nevertheless contain a statement "that appellee agrees with the appellant's statements." Allstate's brief contains neither.

$50,000 for "each accident." (Appellant's App. p. 71). Because of these limits, Allstate settled Amanda's personal injury claim for $25,000. The policy's UIM provisions further provide in relevant part:

General Statement of Coverage.

If a premium is shown on the Policy Declarations for Uninsured Motorist Insurance, we will pay damages which an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of:

1. bodily injury sustained by an insured person; or . . .

\* \* \*

Insured Person(s) means:

a) you and any resident relative

b) any person while in, on, getting into or out of, or getting on or off of an insured auto with your permission.

c) any other person who is legally entitled to recover because of bodily injury to you, a resident relative, or an occupant of your insured auto with your permission.

\* \* \*

Bodily injury means physical harm to the body, sickness, disease, or death but does not include:

a) Any venereal disease;

b) Herpes;

c) Acquired Immune Deficiency Syndrome (AIDS);

d) AIDS Related Complex (ARC);

e) Human Immunodeficiency Virus (HIV); or any resulting symptom, effect, condition, disease, or illness related to a. through e. listed above.

\* \* \*

Limits of Liability.

The coverage limit shown on the Policy Declarations for:

1. "each person" is the maximum that we will pay for damages arising out of bodily injury to one person in any one motor vehicle accident, including damages sustained by anyone else as a result of that bodily injury.

2. "each accident" is the maximum we will pay for damages arising out of all bodily injury in any one motor vehicle accident. This limit is subject to the limit for "each person."

(Appellants' App. pp. 13, 19, and 15).

On July 3, 2002, Appellants filed a Complaint against Allstate seeking damages for negligent infliction of emotional distress. On August 1, 2005, Allstate filed its Motion for Summary Judgment[2] alleging that pursuant to the language of the policy, Austin's and Amber's individual claims for emotional distress are subject to, and included in, the "each person" limit of liability for Amanda's bodily injury claim. In response, Appellants filed their Designation of Matters Relied Upon in Opposition to [Allstate's] Motion for Partial Summary Judgment. On January 22, 2006, after a hearing, the trial court entered an Order in favor of Allstate, finding, in pertinent part:

**2.** In its Motion for Summary Judgment, Allstate designates "the pleadings and the certified copy of its policy issued to [Amanda], the specific portions of which are designated in the accompanying Memorandum in Support of Motion for Partial Summary Judgment." (Appellant's App. p. 109). We caution Allstate's counsel that in light of our recent case law in *AutoXchange.com, Inc. v. Dreyer and* *Reinbold, Inc.,* 816 N.E.2d 40, 47 (Ind.Ct.App. 2004) & *Filip v. Block,* 858 N.E.2d 143 (Ind. Ct.App., 2006) this designation fails. As we clarified in *Filip,* the Motion should contain the specific and detailed designation of evidence relied upon whereas the accompanying Memorandum is merely a persuasive tool to enlighten this court as to the party's arguments. *See Filip,* op. p. 149.

1. Pursuant to the express language of the policy of insurance issued by Allstate to [Amanda], the uninsured motorist claims of negligent infliction of emotional distress asserted by [Amber] and [Austin] arising out of witnessing the personal injuries sustained by [Amanda] are subject to, and included in, the "per person" limit of liability for the uninsured motorist personal injury claim of [Amanda], which limits (i.e., $25,000.00) were exhausted with Allstate's payment of such liability limits to [Amanda] when her uninsured motorist personal injury claim was settled with Allstate. In finding as it does, the [c]ourt is impressed with, and specifically adopts and follows, the legal reasoning of the United States [s]eventh [c]ircuit [c]ourt of [a]ppeals, in *Allstate Insurance Company v. Tozer*, 392 F.3d 950 (7th Cir.2004), wherein the Seventh Circuit found, in a case involving identical policy language to the case at bar, that the bystander claims of emotional distress do not give rise to a "per person" limit of liability separate from personal injury claim of the injured party, in this case [Amanda].

(Appellants' App. p. 9).

Appellants now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Appellants contend that the trial court erred in granting summary judgment to Allstate. Specifically, Austin and Amber assert that the plain and ordinary meaning of "bodily injury," as included within the UIM coverage reasonably encompasses their claims for emotional distress. Furthermore, as they assert to have sustained bodily injury separate from Amanda's, Appellants allege that their compensation is not subject to the "each person" limitation. In response, Allstate maintains that Amber and Austin's emotional distress claims do not constitute bodily injury within the meaning of the policy because their claims are based upon witnessing Amanda's injuries and do not arise out of any bodily contact they experienced in the accident.

### I. *Standard of Review*

■ Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 47 (Ind.Ct.App.2004). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *See Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

■ We observe that in the present case, the trial court entered detailed and helpful findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com*, 816 N.E.2d at 48. However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *Id.*

An insurance policy is a contract and, as such, is subject to the same rules of construction as other contracts. *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind.2005). Interpretation of a contract is a pure question of law and is reviewed *de novo*. *Id.* If its terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning. *Id.* When interpreting an insurance contract courts must look at the contract as a whole, and harmonize its provisions rather than place them in conflict. *Id.* at 252.

## II. *Development of Indiana's Case Law*

The development of Indiana case law on the tort of negligent infliction of emotional distress has been vigorous, to say the least. Beginning with our supreme court's opinion in *Shuamber v. Henderson*, 579 N.E.2d 452 (Ind.1991), the extension of *Shuamber's* modified impact rule in *Groves v. Taylor*, 729 N.E.2d 569 (Ind.2000), and our recent decision in *State Farm Mut. Auto. Ins. Co. v. Jakupko*, 856 N.E.2d 778 (Ind.Ct.App.2006), claims for negligent infliction of emotional distress have obviously gained in importance and sophistication.

Traditionally, Indiana long maintained that damages for emotional distress could only be recovered when the injury was accompanied by a physical impact to the plaintiff. Historically referred to as the impact rule, it required proof of three elements: (1) an impact on the plaintiff; (2) which caused physical injury to the plaintiff; and (3) which injury, in turn, caused the emotional distress. *Boston v. Chesapeake & O. Ry. Co.*, 223 Ind. 425, 61 N.E.2d 326, 327 (1945). Thus, the rule mandated that damages for emotional distress were recoverable only when the distress was accompanied by, and resulted from, a physical injury caused by an impact to the person seeking recovery.

However, in *Shuamber*, our supreme court reformulated its longstanding rule. In this case, a mother and daughter were involved in an automobile accident in which a younger son died. *Shuamber*, 579 N.E.2d at 453. Both mother and daughter sustained various physical injuries, but did not seek recovery for emotional trauma arising out of their own physical injuries. *Id.* Instead, they claimed emotional distress based on the anguish suffered as a result of observing a member of their immediate family sustain mortal injuries in the automobile collision. *Id.* at 453. As such, the Shuambers were precluded from recovery under the impact rule then in effect. After analyzing the policies supporting the impact rule, the *Shuamber* court came to the conclusion that there was "no reason under appropriate circumstances to refrain from extending recovery [to a plaintiff] for emotional distress to instances where the distress is the result of physical injury negligently inflicted on another." *Id.* at 455.

Recognizing the claim for negligent infliction of emotional distress to be a distinct and independent cause of action, the *Shuamber* court enunciated what has become known as the modified direct impact rule:

> When, as here, a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, . . ., such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

*Id.* at 456. The court elaborated that the value of requiring "direct impact" ensures the establishment of clear and unambigu-

ous evidence that the plaintiff was so directly involved in the accident giving rise to the emotional trauma that it is unlikely that the claim is merely spurious. *See id.*

Reevaluating the modified direct impact rule in *Groves,* our supreme court was presented with a situation where a sister witnessed her brother's body roll down the highway after being struck by a police vehicle. *Groves,* 729 N.E.2d at 571. Not having sustained any physical injuries herself, the sister alleged emotional distress as a result of witnessing the negligent action that caused her brother's death. *Id.* In its analysis, the *Groves* court recognized that although the prevention of merely spurious claims is the rationale for the *Shuamber* rule, there may well be circumstances where, while the plaintiff does not sustain a direct impact, "the plaintiff is sufficiently directly involved in the incident giving rise to the emotional trauma that we are able to distinguish legitimate claims from the mere spurious." *Id.* at 572. As such, our supreme court extended the modified direct impact rule, as enunciated in *Shuamber,* to permit a plaintiff to assert a negligent infliction of emotional distress claim, where, although the direct impact test is not met, a bystander establishes:

> 'direct involvement' by proving that the plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise tortuous conduct.

*Id.* at 573.

In our recent decision in *Jakupko,* this court was presented with an issue of first impression as to whether emotional distress accompanied by physical manifestations of that distress constitutes bodily injury under an insurance policy. *Jakup-*

*ko,* 856 N.E.2d at 783. In *Jakupko,* father, mother, and two sons were involved in a vehicle collision, resulting in bodily injuries, with father sustaining injuries resulting in quadriplegia and permanent mental deficits. *Id.* at 780. After witnessing father's injuries, mother and both sons suffered emotional distress and experienced physical manifestations of their emotional trauma, including uncontrollable crying, loss of appetite, sleeplessness, diminished concentration, and fatigue. *Id.* Seeking additional compensation under the UIM provisions of their automobile policy, the *Jakupko's* asserted that they were each entitled to "each person" compensation for their claims of negligent infliction of emotional distress. *Id.* Here, the Jakupkos policy defined "bodily injury" as "bodily injury to a person and sickness, disease or death which results from it." *Id.*

Interpreting the policy's term of 'bodily injury,' we looked to other jurisdictions for guidance. A review of our sister states' case law revealed that a majority of courts hold that allegations of physically-manifested emotional distress fall within bodily injury coverage in the insurance context. *Id.* at 784. Accepting the majority's view, we likewise held that the Jakupkos claims of emotional distress accompanied by physical manifestations of that distress fell within the bodily injury definition of their policy. *Id.*

However, our analysis did not end there. Contending that the Jakupkos emotional injuries resulted from their father's injuries and did not arise from their own injuries received in the accident, the insurance company claimed the three sets of injuries were limited to the policy's 'each person' single cap. *Id.* at 785. Noting Indiana's longstanding characterization of a claim for negligent infliction of emotional distress as an independent tort and the Jakupkos direct involvement in the collision,

we approvingly referred to the Iowa Supreme Court describing the direct causation between an accident and a bystander's emotional distress claim, and stating that "the injury is *directly to the bystander* as a result of the bystander seeing the accident and *reasonably believing* that the direct victim of the accident would be seriously injured or killed." *Id.* (quoting *Pekin Ins. Co. v. Hugh*, 501 N.W.2d 508, 511 (Iowa 1993) (emphasis original)). Accordingly, we held that the Jakupkos emotional distress claims did not result from father's injuries but from their own personal direct involvement in the accident.[3] *Id.* In light of the policy's coverage limitations, we determined that because the Jakupkos sustained separate bodily injuries, their claims for emotional distress are not confined to the single cap applicable to father's injuries, but rather we decided the Jakupkos to be "two or more persons [who sustained bodily injury] in the same accident" and thus fall under the "each accident" coverage of the policy. *Id.* at 786.

As we are presented with a very similar scenario as to the Jakupkos' situation, we will analyze Austin's and Amber's claim for negligent infliction of emotional distress in light of *Jakupko's* holding.

## II. *Analysis in light of Jakupko*

Because Austin's claim slightly differentiates from Amber's, we will review their emotional distress claims separately.

### A. *Austin's Claim for Negligent Infliction of Emotional Distress*

■ At the time of the accident, three-year-old Austin was a passenger in his mother's car. The designated evidence reflects that Austin sustained physical injuries due to the impact of the collision and suffered unconsciousness after exiting the car. Before exiting the vehicle, he saw his mother's head resting upon the console of the car with blood everywhere and initially thought his mother had died. The evidence further establishes that as a result of the accident, Austin suffers emotional distress, exhibited by physical manifestations including diminished concentration and sleep deprivation generally affecting his mental well-being. He now brings a claim for negligent infliction of emotional distress against Allstate based on witnessing the serious injuries to his mother, Amanda.

Austin presents us with a clear-cut *Jakupko* situation. Again, here, the policy defines bodily injury as *"physical harm to the body*, sickness, disease or death,...."* As in *Jakupko*, we find that Austin's physical manifestations of his emotional distress constitutes a physical harm to his body and thus falls clearly within the bodily injury provision of Allstate's policy. *See, e.g., State Farm Fire & Cas. Co. v. Westchester Inv. Co.*, 721 F.Supp. 1165, 1167 (C.D.Cal.1989) (finding that dry throat, rise in body temperature, and knot in stomach are sufficient physical manifestations of emotional distress to constitute bodily injury); *Trinh v. Allstate Ins. Co.*, 109 Wash.App. 927, 37 P.3d 1259, 1264 (Wash.Ct.App.2002) (holding that bodily injury includes emotional distress where it is accompanied by physical manifestations such as weight loss, sleep loss, headaches, stomach pains, and muscle aches).

---

**3.** In so holding, the *Jakupko* court expressly disagreed with the United States court of appeals for the Seventh Circuit in *Allstate Ins. Co. v. Tozer*, 392 F.3d 950 (7th cir.2004), which involved similar facts and policy provisions. The *Tozer* court concluded that since the plaintiffs' emotional distress claims were for damages sustained "as a result of" their brother's injuries, their claims were subject to a single cap. Because the trial court in the instant case relied on *Tozer*, we find it noteworthy to expressly decline to follow the Seventh Circuit as we conclude that *Jakupko* reaches the better result.

■ Furthermore, Austin's claim for emotional distress did not result from his mother's injuries but rather from his direct involvement in the accident and reasonable belief that Amanda had died. Accordingly, his claim is not remote or secondary to Amanda's, but independent. Because Austin sustained separate bodily injury, his emotional distress claim is not confined to the "each person" cap applicable to Amanda's bodily injury and "damages sustained by anyone else as a result of [Amanda's] bodily injury." (Appellant's App. p. 19). Instead, we hold as a matter of law that Austin's claim constitutes "damages arising out of *all* bodily injury in any one motor vehicle accident," and therefore falls under the "each accident" coverage. (Appellant's App. p. 15). Thus, we conclude that the trial court erred when it found that Austin's claim for negligent infliction of emotional distress is subject to the "each person" coverage of Allstate's policy.

### B. Amber's Claim for Negligent Infliction of Emotional Distress

■ Amber was a passenger in her sister Amanda's car. At the moment of the collision, Amber became unconscious; when she regained consciousness, the evidence shows that she saw her sister "laying there with blood all over her." (Transcript p. 169). Amber sustained head injuries and required seven staples in the back of her head. Like Austin, Amber filed a negligent infliction of emotional distress claim against Allstate based on witnessing the serious injuries incurred by Amanda. However, unlike Austin, the evidence fails to designate any physical manifestations of Amber's emotional distress. Instead, the record indicates that even though Amber is diagnosed with clinical depression, she is not in counseling or exhibiting any physical signs. Rather, the evidence supports that Amber is consumed by feelings of guilt, anger, and sadness.

In *Jakupko*, we expressly reserved the question "whether a negligent infliction of emotional distress claim unaccompanied by physical manifestations constitutes bodily injury under an insurance policy" for "another day." *Jakupko*, 856 N.E.2d at 784. Sooner than expected we now have to decide this issue of first impression. Although no Indiana decisions have expressly ruled on this question, we are not left without some indication as to how Indiana courts would decide the issue.

In *Groves*, where our supreme court extended *Shuamber's* modified impact test by constructing the 'direct involvement' theory to permit a plaintiff to assert a negligent infliction of emotional distress claim, the court approvingly cited to—now—Chief Judge Kirsch's concurring opinion. *Groves*, 729 N.E.2d at 571. Praising the *Shuamber* decision as an important step towards eliminating the harsh consequences of the impact rule by reexamining and eliminating the physical injury requirement, Judge Kirsch expressed the hope that our supreme court would see *Groves* as an opportunity to take another such step. In this light, the *Groves* court cited Judge Kirsch as saying that "traumatic events can have severe, debilitating and foreseeable emotional effect *even if not accompanied* by physical injury, a direct impact, or a direct involvement." *Id.* (emphasis added).

Prior to the *Groves* decision, this court issued its opinion in *Wayne Twp. Bd. of School Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* In Wayne Township, a victim of child molestation filed a claim for negligent infliction of emotional distress against the school and the perpetra-

tor. *Id.* at 1207. Under the school's comprehensive general liability insurance policy, bodily injury was defined as "bodily injury, sickness or disease ..." *Id.* at 1210. Noting that the policy extended the meaning of bodily injury beyond physical injury, we stated in dicta that "the average lay person reading the policy would not conclude that mental anguish is excluded from the ambit of 'sickness.'" *Id.* at 1211. Nevertheless, we determined that the emotional injury sustained by the victim of child molestation resulted "from a physical intrusion upon the child's body and therefore is bodily injury." *Id.* Given that the emotional injury in Wayne Township stemmed from a physical intrusion upon the plaintiff, our holding in that case does not resolve the issue of whether a plaintiff's emotional distress unaccompanied by physical manifestations constitutes bodily injury under an insurance policy.

As our courts appear to evolve towards taking another step in the development of emotional distress claims in Indiana, the established case law of some of our sister states has already brought a pure claim of emotional distress without accompanying physical manifestations within the gambit of an insurance policy's bodily injury. In *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736, 737 (La.1994), Crabtree sought mental anguish damages from her insurance company after witnessing her husband being struck by an oncoming car. The facts on record are devoid of any physical manifestations of her distress. *Id.* The Louisiana supreme court, faced with a division in its state's case law, found the definition of bodily injury in State Farm's policy to be ambiguous. *Id.* at 744. In this instance, bodily injury was defined as "bodily injury to a person, and sickness, disease, or death which results from it." *Id.* The court reasoned that if the definition was intended to cover only external, physical injuries, then

"bodily injury" easily could have been defined in a more restrictive fashion. *Id.* As such, the *Crabtree* court found it reasonable that the term bodily injury included severe and debilitating mental pain and anguish experienced by a victim's spouse as a result of witnessing the accident and injuries suffered by the victim. *Id.*

Likewise, noting that the insurance policy extended "bodily injury" beyond mere physical injury, and also included sickness and disease, the New York supreme court, appellate division in *Lavanant v. G.A. Ins. Co. of America*, 164 A.D.2d 73, 79, 561 N.Y.S.2d 164 (1990), stated that the words should be given their plain and ordinary meaning. As such, the court reasoned that the average lay person reading G.A.'s accident policy would not conclude that mental anguish was excluded from the ambit of sickness. *Id.* at 80, 561 N.Y.S.2d 164.

In light of the case law in our sister states and Indiana's explorations into the area thus far, we now hold as a matter of law that a negligent infliction of emotional distress claim unaccompanied by physical manifestations thereof constitutes bodily injury under Allstate's policy. An individual's mental health is an essential component to the overall operation of the physical structure of his body. As such, we are unable to separate a person's nerves and tensions from his physique. Clearly, emotional trauma can be as disabling to the body as a visible wound. Instituting a rigid requirement which prevents a plaintiff from recovering emotional harm except where a physical injury manifestation has ensued, would completely ignore the advances made in modern medical and psychiatric science.

Furthermore, we attach significance to the fact that Allstate's policy does not limit bodily injury to mere physical harm to the

body but expands the definition to "sickness, disease, or death but does not include: (a) any venereal disease; (b) herpes; (c) acquired immune deficiency syndrome (AIDS); (d) aids related complex (ARC); (e) human immunodeficiency virus (HIV); or any resulting symptom, effect, condition, disease or illness related to a. through e. listed above." (Appellants App. p. 19). Thus, clearly, the policy covers more than merely physical harm. Also, the phrasing indicates that 'sickness' need not result from the physical harm, but rather stands on its own as an independent ailment.[4] In this sense, we agree with our dicta in *Wayne Township* that the average lay person reading the policy would not conclude that emotional trauma is excluded from 'sickness.' *See Wayne Twp.*, 650 N.E.2d at 1211. Moreover, if this definition was intended to cover only external, physical injuries, then bodily injury could easily have been more narrowly defined through the use of such words.

Nevertheless, we are mindful of our supreme court's concern with distinguishing legitimate claims of emotional distress from the mere spurious ones. *See Groves*, 729 N.E.2d at 572; *Shuamber*, 579 N.E.2d at 456. Other states have recognized that the essence of the tort is the shock caused by the perception of the especially horrendous event. "The kind of shock the tort requires is the result of the immediate aftermath of an accident. It may be the crushed body, the bleeding, the cries of pain, and, in some cases, the dying words which are really a continuation of the event. The immediate aftermath may be more shocking than the actual impact." *Gates v. Richardson*, 719 P.2d, 193, 199

(Wyo.1986). It is hard to imagine a mental injury that is more believable than one suffered by a person who witnesses the serious injury or death of a family member or loved one. However, as the relationship between the victim and the person witnessing the injury becomes more attenuated, the pure mental harm to that person without physical manifestations becomes less plausible.

■ Accordingly, the challenge is to create a rule that acknowledges the shock of seeing a victim shortly after an accident, without extending a defendant's liability to every relative who grieves for the victim. Therefore, although we extend *Jakupko's* holding today and find that a claim for negligent emotional distress unaccompanied by physical manifestations of emotional distress can constitute bodily injury under an insurance policy, we limit our decision to a plaintiff's emotional distress that is susceptible to medical diagnosis and can be proven through medical evidence.

In the case before us, the designated evidence demonstrates that, for purposes of trial, Amber was evaluated by Rev. Dr. James W. Witty, Jr. (Dr. Witty), a pastoral counselor and psychotherapist. Based on Amber's behavior and responses during a counseling session, Dr. Witty diagnosed her as being clinically depressed. Thus, pursuant to our rule, we conclude that Amber sustained emotional distress covered under Allstate's policy.

■ Like Austin's claim, we decide that Amber's claim for emotional distress was not derivative of Amanda's injuries but rather resulted from her own direct in-

---

4. As such, we distinguish *Armstrong v. Federated Mut. Ins. Co.*, 785 N.E.2d 284, 292 (Ind. Ct.App.2003), *reh'g denied, trans. denied*, where we observed that bodily injury, defined as "bodily injury to a person and sickness, disease or death *which results from it*," did not appear to include emotional trauma not accompanied by physical injury. (emphasis added). Unlike *Armstrong*, Allstate's policy does not contain the qualifier *"results from it"* in its bodily injury definition.

volvement in the accident and witnessing her sister's injuries. Therefore, Amber's claim constitutes "damages arising out of *all* bodily injury in any one motor vehicle accident," and thus is included in the "each accident" coverage. (Appellant's App. p. 15). Consequently, the trial court erred when it found that Amber's claim for negligent infliction of emotional distress is subject to the "each person" coverage of Allstate's policy.

## CONCLUSION

Based on the foregoing, we hold that the definition of bodily injury in Allstate's policy includes negligent infliction of emotional distress that is susceptible to medical diagnosis and can be proven through medical evidence even when not accompanied by physical manifestations of that distress. Accordingly, we find that Amber's claim is covered under Allstate's policy. Pursuant to *Jakupko,* we also determine that Austin's claim falls within the policy's definition of bodily injury. Furthermore, Appellants negligent infliction of emotional distress claims are subject only to the "each accident" limit of liability. Therefore, we conclude that the trial court erred when it granted summary judgment in favor of Allstate.

Reversed and remanded for further proceedings.

KIRSCH, C.J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting.

I believe the trial court correctly granted partial summary judgment in favor of Allstate, and therefore respectfully dissent from the majority's decision to reverse that ruling.

The majority lays out its interpretation of the development of the tort of negligent infliction of emotional distress in Indiana law, and then applies that analysis to two situations, one that this court has addressed before, and one that it has not. The first involves the viability of a claim for negligent infliction of emotional distress where the plaintiff's claimed emotional trauma manifests itself in physical symptoms, but the alleged emotional trauma stems not from his or her own physical injuries, but instead from viewing someone else's. This is the essence of Austin's claim, and the majority cites *State Farm Mut. Auto. Ins. Co. v. Jakupko,* 856 N.E.2d 778 (Ind.Ct.App.2006) as authority for ruling that it is a viable claim in this case. The second situation is Amber's, i.e., one in which the plaintiff's claimed emotional trauma does *not* manifest itself in physical symptoms. This is a question of first impression and the majority decides it in favor of Amber and future plaintiffs similarly situated. Although I harbor reservations about the majority's analyses of those issues, especially with respect to Amber's claim, I would not reach those issues, because I subscribe to the views expressed in *Allstate Ins. Co. v. Tozer,* 392 F.3d 950 (7th Cir.2004) to the effect that the applicable limits under this insurance policy have been exhausted.

In *Tozer,* siblings sought to recover damages for emotional distress they allegedly suffered after witnessing their brother's injuries (from which he eventually died) in a traffic accident—an accident in which they were passengers in the same car as the deceased. The insurance policy in that case contained limits of $100,000 for each person and $300,000 for each accident. It also provided, "The limit stated for each person for bodily injury is our total limit of liability for all damages because of bodily injury sustained by one person, *including all damages sustained by anyone else as a result of that bodily*

*injury."* *Id.* at 953 (emphasis in original). The corresponding clause in the instant policy is substantially similar and states, "The coverage limit shown on the Policy Declarations for: 1. 'each person' is the maximum that we will pay for damages arising out of bodily injury to one person in any one motor vehicle accident, including damages sustained by anyone else as a result of that bodily injury." *Appellant's Appendix* at 97. The surviving siblings in *Tozer* sought to recover damages for negligent infliction of emotional distress. The insurer denied coverage on the ground that it had paid the policy limits for the decedent's injuries and that the siblings' claims "resulted from" that injury within the meaning of the policy language. Therefore, the insurance company claimed, it had already paid the "each person" limit of the policy in that respect. The *Tozer* court agreed, and in so doing, decided that emotional distress is not a "bodily injury" within the meaning of the policy, but instead is damage sustained by a third person as a result of another person's bodily injury or death. The court concluded, "Because the policy caps Allstate's liability for all damages 'resulting from' [the decedent's] injuries, and [the surviving siblings'] emotional distress result from his injuries, the insurer's liability for these claims is exhausted." *Id.* at 95.

I believe *Tozer* was correctly decided on this point and would apply it here. The majority, however, rejects *Tozer* in favor of *Jakupko,* which reached a contrary conclusion on the question of whether emotional distress is a bodily injury within the meaning of policy language such as is before us here. We are left, then, to decide which view is better. I part ways with the majority and conclude that emotional distress under these circumstances is not a bodily injury within the meaning of the policy, and therefore that Austin's and Amber's claims for emotional distress "re-

sult from" Amanda's injuries. Having already paid the policy limits for Amber's injuries, Allstate's liability on claims derivative of those injuries is exhausted. *See Allstate Ins. Co. v. Tozer,* 392 F.3d 950. On this basis, I would affirm the grant of partial summary judgment in favor of Allstate.